UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARCIA LYNETTE JOHNSON                          CIVIL ACTION

VERSUS                                          NO. 11-3030

MICHAEL J. ASTRUE, COMMISSIONER                 SECTION "S" (2)
OF SOCIAL SECURITY ADMINISTRATION

## FINDINGS AND RECOMMENDATION

Plaintiff, Marcia Lynette Johnson, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI, respectively, of the Act. 42 U.S.C. §§ 405(g), 423, 1381a. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

## I.    PROCEDURAL HISTORY

Johnson filed applications for DIB and SSI on August 24, 2009, alleging disability since March 1, 2009, due to back problems, sleep apnea and depression. (Tr. 116-22, 136). After her applications were denied initially, she requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 24, 2010. (Tr. 35-63). On October 28, 2010, the ALJ issued a decision finding that Johnson has severe

impairments consisting of depression and degenerative disc disease of the lumbar spine with chronic pain syndrome. At the last step of the five-part sequential evaluation, the ALJ denied plaintiff's applications for benefits, based on findings that Johnson has the residual functional capacity to perform a limited range of light work and that significant numbers of jobs exist in the national economy which she could perform. (Tr. 16-26).

The Appeals Council granted plaintiff's request to review the ALJ's decision. On October 7, 2011, the Appeals Council adopted the ALJ's step one and two findings, but made an additional finding that plaintiff's obesity is a severe impairment. The Appeals Council found that a limitation to light work activity adequately accounts for any limitations stemming from this impairment. The Appeals Council adopted the ALJ's findings at the next three steps of the evaluation, including the ALJ's assessments of Johnson's mental and physical residual functional capacities and that significant numbers of jobs exist that she can perform, and concluded that plaintiff is not disabled. (Tr. 4-7). The Appeals Council's decision became the final decision of the Commissioner for purposes of this court's review. (Tr. 1-3).

II.     STATEMENT OF ISSUE ON APPEAL

Plaintiff contends that the ALJ made the following error:

A.      The ALJ erred by relying on the vocational expert's testimony because that testimony directly conflicts with the Dictionary of Occupational Titles.

III.   ALJ'S FINDINGS RELEVANT TO ISSUE ON APPEAL

The ALJ made the following relevant findings, as amended by the Appeals

Council:

1.   Johnson has severe impairments, consisting of depression, degenerative
     disc disease of the lumbar spine with chronic pain syndrome and obesity.

2.   She has the residual functional capacity to perform light work with the
     following limitations: she can never climb ladders, ropes or scaffolds; she
     can occasionally climb ramps and stairs, crouch and crawl; she can
     frequently balance, stoop and kneel; and her work-related activities should
     be limited to simple, repetitive and routine tasks in a low stress job, defined
     as involving only occasional decision-making and occasional changes in
     work setting.

3.   Although the ALJ held that plaintiff is not capable of performing her past
     relevant work as an alligator farm supervisor, care giver, housekeeper or
     short-order cook, the Appeals Council found that Johnson had no past
     relevant work.

4.   Considering her age of 50 years old, high school education and residual
     functional capacity, there are jobs in significant numbers that Johnson can
     perform, including representative occupations such as information clerk
     and counter clerk, which are unskilled jobs at the light exertional level.

5.   The vocational expert's testimony is consistent with the information
     contained in the Dictionary of Occupational Titles.

(Tr. 19-25).

IV. ANALYSIS

A. Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Perez, 415 F.3d at 461; Loza, 219 F.3d at 393. This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether

substantial evidence supports it.  <u>Perez</u>, 415 F.3d at 461.  Any findings of fact by the

Commissioner that are supported by substantial evidence are conclusive.  <u>Id.</u>; <u>Newton</u>,

209 F.3d at 452; <u>Martinez v. Chater</u>, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI or DIB,[1] plaintiff must show that

she is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations

that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§

404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2010).  The regulations

include a five-step evaluation process for determining whether an impairment prevents

a person from engaging in any substantial gainful activity.  <u>Id.</u> §§ 404.1520, 416.920;

<u>Perez</u>, 415 F.3d at 461; <u>Waters</u>, 276 F.3d at 716; <u>Loza</u>, 219 F.3d at 393.[2]  The five-step

_____

[1]The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI.  <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994); <u>Hollis v. Bowen</u>, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988).

[2]The five-step analysis requires consideration of the following:
    First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).
    Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  <u>Id.</u> §§ 404.1520(c), 416.920(c).
    Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  <u>Id.</u> §§ 404.1520(d), 416.920(d).

inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  <u>Perez</u>, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry.  If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  <u>Id.</u>; <u>Newton</u>, 209 F.3d at 453.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history."  <u>Martinez</u>, 64 F.3d at 174.

---

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  <u>Id.</u> §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  <u>Id.</u> §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  <u>Id.</u> § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

B.     Vocabulary Expert Testimony

In the instant appeal, Johnson does not contest any of the Commissioner's findings, as revised by the Appeals Council, at the first four steps of the sequential evaluation. Thus, the only evidence that is relevant to plaintiff's single assignment of error is the testimony of the vocational expert, Deborah Bailey. Bailey testified at the hearing that plaintiff's past jobs as an assistant supervisor at an alligator farm, a housekeeper and a short-order cook were light, unskilled jobs and that her past job as a care giver with patients was medium, unskilled work. (Tr. 56-57).

The ALJ posed a hypothetical of a person with the residual functional capacity to perform light work, who can never climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs, crouch and crawl; can frequently balance, stoop and kneel; and is limited to simple, routine and repetitive tasks in a low stress job environment, defined as having only occasional decision-making and occasional changes in the work setting. Bailey testified that such a person could perform plaintiff's past work as a housekeeper. (Tr. 57, 59).

The ALJ added to the first hypothetical an additional limitation of needing to alternate sitting and standing at will, provided that the individual is not off-task more than ten percent of the work period. The vocational expert stated that such a person could not perform any of plaintiff's past jobs. (Tr. 57-58, 59).

The ALJ then asked if a person with the same residual functional capacity as in the first hypothetical could perform other jobs available in significant numbers in the national economy. Bailey testified that such a person could perform light, unskilled jobs, such as information clerk and counter clerk. (Tr. 58, 60). She stated that a person with the residual functional capacity in the ALJ's second hypothetical could also perform the jobs of information clerk and counter clerk. Bailey testified that her answers were consistent with the Dictionary of Occupational Titles. (Tr. 60).

Upon questioning by plaintiff's attorney, Bailey stated that the Dictionary of Occupational Titles code number for information clerk is "237367018" and the number for counter clerk is "295357018." (According to the Dictionary of Occupational Titles, these numbers are 237.367-018 and 295.357-018, respectively; see copy of relevant pages of Dictionary of Occupational Titles attached to plaintiff's memorandum, Record Doc. No. 15-1 at pp. 2-3.)

Upon continued examination by Johnson's counsel, Bailey testified that an inability to stoop or bend would eliminate the first hypothetical person's ability to perform the past job of housekeeper, but would not affect the person's ability to perform the job of information clerk. However, Bailey stated that this additional limitation would decrease by one-half the number of available counter clerk positions. (Tr. 61). She testified that a person with the residual functional capacity of the ALJ's first hypothetical,

but who is unable to stoop or bend and who, because of pain, must recline two to three times a day at unpredictable intervals for 20 minutes at a time, would not be able to perform the jobs of housekeeper, information clerk or counter clerk. (Tr. 61-62).

C.    Plaintiff's Appeal

Johnson does not contest any of the Commissioner's findings at the first four steps of the sequential evaluation. At step five, the ALJ relied on Bailey's testimony to find that plaintiff can perform jobs that exist in significant numbers, such as information clerk and counter clerk. Bailey testified that her testimony was consistent with the Dictionary of Occupational Titles. Johnson argues nonetheless that the descriptions in the Dictionary of Occupational Titles of the jobs Bailey cited are "in direct conflict" with the ALJ's finding that plaintiff is limited to simple, repetitive and routine tasks, and that this matter must be remanded to address the conflict. I find that the ALJ properly applied the law in this case and that substantial evidence supports her findings.

The ALJ posed a hypothetical to the vocational expert of a person with the residual functional capacity to perform light work (with certain postural limitations not at issue here), who is limited to simple, repetitive and routine tasks in a low stress job environment, defined as having only occasional decision-making and occasional changes in the work setting. Bailey testified that such a person could perform light, unskilled

jobs, such as information clerk and counter clerk. Plaintiff's attorney cross-examined Bailey at the hearing.

At the fifth step of the sequential evaluation, the ALJ may rely on vocational expert testimony to reach conclusions about the specific requirements of a particular occupation, including working conditions and the attributes and skills needed for the occupation. 20 C.F.R. § 404.1566(d), (e); Villalpando v. Astrue, 320 F. App'x 208, 211 (5th Cir. 2009); Weary v. Astrue, 288 F. App'x 961, 967 (5th Cir. 2008); Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995); SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). If "the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments [as Johnson does in the instant case], then the Commissioner must rely on a vocational expert to establish that such jobs [that the claimant can perform] exist in the economy." Newton, 209 F.3d at 458 (emphasis added) (citation omitted); accord Carey v. Apfel, 230 F.3d 131, 145 (5th Cir. 2000).

Although the Commissioner may take notice of the reliable job information available from various governmental and other publications, including the Dictionary of Occupational Titles, he is not bound by it, but may rely on vocational expert testimony. 20 C.F.R. § 404.1566(d), (e); Carey, 230 F.3d at 145; Vaughan v. Shalala, 58 F.3d 129, 132 (5th Cir. 1995); Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990). Accordingly, even if the vocational expert testimony differs from the published job data, the testimony

may constitute substantial evidence upon which the ALJ can rely in appropriate cases to satisfy the Commissioner's burden at the fifth step of the sequential evaluation. Carey, 230 F.3d at 145-47.

Johnson's limitation to simple, repetitive and routine tasks equates to a limitation to unskilled work. "[A]n unskilled job is 'work which needs little or no judgment to do simple duties.' Such work 'ordinarily involve[s] dealing primarily with objects, rather than with data or people.'" Zaricor-Ritchie v. Astrue, 452 F. App'x 817, 825 (10th Cir. 2011) (quoting 20 C.F.R. § 404.1568(a); SSR 85-15, 1985 WL 56857, at *4 (1985)); see also Warren v. Astrue, No. 5:08-CV-149-FL, 2009 WL 1392898, at *12 (E.D.N.C. May 18, 2009) (quoting Hall v. Harris, 658 F.2d 260, 266 (4th Cir. 1981)) ("('Unskilled work denotes work which requires little or no judgment in the performance of simple duties that can be learned on the job in a short period of time.')"). "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4.

Johnson has attached to her memorandum copies of two pages from the Dictionary of Occupational Titles, published by the United States Department of Labor (Vol. I, 4th ed., rev. 1991), which contain the code numbers which Bailey cited in her testimony

as descriptive of the jobs of information clerk and counter clerk, and of Appendix C, entitled "Components of the Definition Trailer" (Vol. II of the same edition). Record Doc. No. 15-1; also available at http://www.occupationalinfo.org/appendxc_1.html. Within the broad category of Information and Reception Clerks, Section 237-367.018 of the Dictionary of Occupational Titles describes an information clerk in the transportation industry. The strength level for this job is light, the Specific Vocational Preparation level is 2[3] and the General Educational Development Reasoning Level is 4. Record Doc. No. 15-1 at p. 2. Under the category of Rental Clerks, Section 295-357.018 describes the job of a furniture rental clerk with a strength level of light, Specific Vocational Preparation level of 2 and General Educational Development Reasoning Level of 3. Id. at p. 3.

Plaintiff does not dispute that these jobs are light, unskilled and within her physical residual functional capacity. However, she argues that her mental functional capacity limitation to simple, repetitive and routine tasks conflicts with the General

---

[3]The Specific Vocational Preparation ("SVP") level of a particular job is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." SVP 2 means "anything beyond a short demonstration up to and including 1 month;" . . . .
. . . . ["]Using the skill level definitions in 20 C.F.R. 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2 . . . .["]
Bray v. Comm'r, 554 F.3d 1219, 1230 n.4 (9th Cir. 2009) (Wu, J., concurring) (quoting Dictionary of Occupational Titles, App. C, at 1009; SSR 00-4p, 2000 WL 1898704, at *3); accord Dikeman v. Halter, 245 F.3d 1182, 1186 n.2 (10th Cir. 2001); Jackson v. Astrue, No. 4:11-CV-28-Y, 2011 WL 4943547, at *9 n.8 (N.D. Tex. Aug. 23, 2011), report & recommendation adopted, 2011 WL 4940998 (N.D. Tex. Oct. 17, 2011).

Educational Development Reasoning Levels of 4 and 3 in the descriptions of information clerk and furniture rental clerk, respectively. Johnson contends that her mental functional capacity limits her to jobs with Reasoning Levels of 1 or 2, and that this unresolved "direct conflict" between the ALJ's findings and Bailey's testimony requires a remand for further proceedings.

According to Appendix C of the Dictionary of Occupational Titles, the General Educational Development component of a job definition

> embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college. However, it may be obtained from experience and self-study. The [General Educational Development] Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development.

Record Doc. No. 15-1 at pp. 5, 8.

The Reasoning Development Scale ranges from Level 1, which reflects the simplest type of reasoning, to Level 6, the most complex. In jobs that implicate Level 1 reasoning, a worker will "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." Level 2 means to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from

standardized situations."  Level 3 is defined as the ability to "[a]pply commonsense

understanding to carry out instructions furnished in written, oral, or diagrammatic form.

Deal with problems involving several concrete variables in or from standardized

situations."  At Level 4, which is the highest level at issue in the instant case, a worker

will "[a]pply principles of rational systems to solve practical problems and deal with a

variety of concrete variables in situations where only limited standardization exists.

Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule

form."  Id. at pp. 6-7.

Johnson contends that the ALJ failed to resolve a "direct conflict" between the

Dictionary of Occupational Titles job definitions and Bailey's testimony, so that Social

Security Ruling 00-4p requires a remand.  That Ruling provides, in relevant part:

> Occupational evidence provided by a VE [vocational expert] . . .
> generally should be consistent with the occupational information supplied
> by the DOT [Dictionary of Occupational Titles].  When there is an apparent
> unresolved conflict between VE . . . evidence and the DOT, the adjudicator
> must elicit a reasonable explanation for the conflict before relying on the
> VE . . . evidence to support a determination or decision about whether the
> claimant is disabled.  At the hearings level, as part of the adjudicator's duty
> to fully develop the record, the adjudicator will inquire, on the record, as
> to whether or not there is such consistency.
> Neither the DOT nor the VE . . . evidence automatically "trumps"
> when there is a conflict. The adjudicator must resolve the conflict by
> determining if the explanation given by the VE . . . is reasonable and
> provides a basis for relying on the VE . . . testimony rather than on the
> DOT information.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added). Thus, for Social Security Ruling

00-4p to be applicable, the conflict must be "apparent," i.e., evident, at the time of the

administrative hearing. Welch v. Astrue, No. 1:11-cv-384-GZS, 2012 WL 3113148, at

*7 (D. Me. July 11, 2012), report & recommendation adopted, 2012 WL 3113144 (D.

Me. July 31, 2012).

> The Fifth Circuit

> has recognized that the DOT is not comprehensive, in that it cannot and
> does not purport to include each and every specific skill or qualification for
> a particular job. The value of a vocational expert is that he [or she] is
> familiar with the specific requirements of a particular occupation, including
> working conditions and the attributes and skills needed. Thus, although
> this Court has not [previously] addressed when there is a conflict between
> the testimony of a vocational expert and the DOT and how that conflict is
> to be resolved, this Court has acknowledged that the DOT job descriptions
> should not be given a role that is exclusive of more specific vocational
> expert testimony with respect to the effect of an individual claimant's
> limitations on his or her ability to perform a particular job.

Carey, 230 F.3d at 145 (quotation and citations omitted) (emphasis added).

It is well established that the "definitions of particular jobs in the DOT represent

approximate, maximum requirements for each position. . . . In fact, 'reliance on the DOT

as a definitive authority on job requirements is misplaced, however, for DOT definitions

are simply generic job descriptions that offer the appropriate maximum requirements for

each position rather than their [range].'" Gustafson v. Astrue, No. 10-4962, 2011 WL

6219641, at *6 (D. Minn. Nov. 29, 2011), report & recommendation adopted, 2011 WL

6218211 (D. Minn. Dec. 14, 2011) (citing <u>Young v. Apfel</u>, 221 F.3d 1065, 1070 (8th Cir.

2000); <u>Montgomery v. Chater</u>, 69 F.3d 273, 276 (8th Cir. 1995)) (quoting <u>Hall v. Chater</u>,

109 F.3d 1255, 1259 (8th Cir. 1997)) (emphasis added); <u>accord</u> <u>Hillier v. Chater</u>, 486

F.3d 359, 366 (8th Cir. 2007); <u>Pete v. Astrue</u>, No. 08-774, 2009 WL 3648453, at *5-6

(W.D. La. Nov. 3, 2009) (citing SSR 00-4p, 2000 WL 1898704, at *3; <u>Hall</u>, 109 F.3d at

1259); <u>see also</u> <u>Hillier</u>, 486 F.3d at 367 ("Not all of the jobs in every category have

requirements identical to or as rigorous as those listed in the DOT.") (quotation and

citation omitted); <u>Veal v. Soc. Sec. Admin.</u>, 618 F. Supp. 2d 600, 609 (E.D. Tex. 2009)

(The Dictionary of Occupational Titles "provides only <u>standardized</u> job information,

whereas a vocational expert's testimony is tailored to an <u>individual</u> claimant's work skills

as contained in an administrative law judge's hypothetical question.").

 In <u>Carey</u>, which was decided a few months before SSR 00-4p was published, the

Fifth Circuit distinguished between direct and implied conflicts that may arise between

the Dictionary of Occupational Titles definitions and a vocational expert's testimony, and

adopted guidelines for analyzing such conflicts.

> Under governing circuit law, an administrative law judge may in
> appropriate cases give greater weight to expert vocational testimony than
> to findings in the DOT. . . .
> An administrative law judge's discretion to choose between
> conflicting evidence is not unfettered, however.  In <u>Carey v. Apfel</u>, the
> Fifth Circuit embraced what it called a "middle ground."  When a <u>direct
> and obvious</u> conflict exists, and the administrative law judge fails to
> explain or resolve the conflict, the probative value of the vocational

expert's testimony is so lessened that a reversal and remand for lack of substantial evidence usually follows. But when the conflict is <u>tangential, implied or indirect</u>, and it did not undergo adversarial development at the administrative hearing, the vocational expert's testimony may be accepted and relied upon by the administrative law judge without resolving the later-proffered conflict provided the record reflects an adequate basis for doing so.

<u>Veal</u>, 618 F. Supp. 2d at 609 (citing <u>Carey</u>, 230 F.3d at 146).

An expert's testimony can create a direct conflict

in at least two different ways. First, the vocational expert may testify that a particular job requires a particular exertional or skill level, when the DOT expressly provides that the job requires a different exertional level. <u>See, e.g.</u>, <u>Conn v. Secretary of Health & Human Servs.</u>, 51 F.3d 607, 610 (6th Cir. 1995) (vocational expert testified that particular jobs required only a sedentary exertional level, while the DOT classified those same jobs as light or medium). With this most direct and obvious type of conflict, the ALJ is asked to accept the vocational expert's testimony, even though that testimony is in actual conflict with the provisions of the DOT, which is routinely relied upon by the responsible agency. A second, and different type of [direct] conflict may arise when the vocational expert's testimony places the ALJ's finding with respect to the claimant's residual functional capacity or the claimant's specific impairments in conflict with the exertional or skill level or the specific skills required for the identified jobs in the DOT. <u>See, e.g.</u>, <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1087-88 (10th Cir. 1999) (vocational expert testified that claimant could perform three jobs classified by the DOT as requiring a light or heavy exertional level after the ALJ found that claimant had the residual functional capacity for only sedentary work); <u>Johnson v. Shalala</u>, 60 F.3d 1428 (9th Cir. 1995) (vocational expert testified that claimant could perform a job classified by the DOT as light, notwithstanding the ALJ's determination that the claimant retained the residual functional capacity for only sedentary work).
         . . . .
         . . . . Certainly, a vocational expert's erroneous characterization of the exertional level or skills required to perform a particular job calls into question both the probative value and reliability of the expert's testimony.

Likewise, an explained [sic; should be "unexplained"] discrepancy between the ALJ's determination of the claimant's residual functional capacity and the vocational expert's testimony that the claimant can perform certain identified jobs with inconsistent skill requirements may require remand for further exploration.

Carey, 230 F.3d at 145 n.2, 146.

A tangential, implied or indirect conflict occurs when there is no direct conflict between the expert testimony regarding the exertional or skill level required for a particular job and the Dictionary of Occupational Titles, but additional inferences can be drawn (and the plaintiff is asking the court to draw them on appeal) that the Dictionary of Occupational Titles description may conflict with the vocational expert's testimony that the claimant is capable of performing a particular job.  For example, in Carey, plaintiff's left arm had been amputated.  Given a hypothetical claimant with a residual functional capacity for light, unskilled work, limited by the inability to use the left arm and hand, the vocational expert testified that the claimant could perform the jobs of cashier or ticket taker.  Plaintiff's counsel did not question the vocational expert about any conflict between the testimony and the Dictionary of Occupational Titles, and did not explore further whether a one-armed person could perform the jobs identified.  Id. at 145-146.

On appeal, Carey argued that the vocational expert's testimony was "incredible in light of or inconsistent with the skill requirements listed for those jobs in the DOT.

Specifically, Carey notes that both jobs require handling and fingering for between one-third and two-thirds of the day, finger dexterity in the middle third of the population, and manual dexterity within the lowest third of the population . . . ." Id. at 145. The Fifth Circuit found no direct conflict because "[t]he DOT does not contain any requirement of bilateral fingering ability or dexterity, and the vocational expert specifically testified that the jobs of cashier and ticket seller could be performed with the use of only one arm and hand." Id. at 146. Rather, the Fifth Circuit held that the alleged conflict "does not even become apparent until the further inference is made that the jobs require manual dexterity with, not one, but two hands." Id. The court found that the conflict was "tangential [and] . . . actually reduces to a factual disagreement about whether a person with one arm can perform a job requiring some degree of manual dexterity and fingering." Id. Because the record contained no evidence that the vocational expert's testimony was incorrect, the Fifth Circuit affirmed the district court's determination that the ALJ had not erred by failing to explore the alleged conflict. Id.

Regarding implied or indirect conflicts, the Fifth Circuit concluded:

To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, we agree with the majority of the circuits that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so. As the facts of this case demonstrate, all kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants should not be permitted to scan the record for implied or

unexplained conflicts between the specific testimony of an expert witness
and the voluminous provisions of the DOT, and then present that conflict
as reversible error, when the conflict was not deemed sufficient to merit
adversarial development in the administrative hearing. Adopting a middle
ground approach, in which neither the DOT nor the vocational expert
testimony is per se controlling, permits a more straightforward approach to
the pertinent issue, which is whether there is substantial evidence
supporting the Commissioner's determination that this particular person
can do this particular job or group of jobs.

Id. at 146-47.

The approach outlined in Carey informs this court's analysis. The Fifth Circuit's

analysis of whether a conflict is direct is similar to the requirement in SSR 00-4p that a

conflict must be "apparent" for that Ruling to apply.

The issue presented in the instant case is whether the vocational expert's testimony

that a claimant who is limited to simple, repetitive and routine tasks can perform the jobs

of information clerk and furniture rental clerk conflicts with the Dictionary of

Occupational Titles, which provides that those jobs require a Reasoning Level of 4 and 3,

respectively, even though the vocational expert testified that her testimony was consistent

with the Dictionary of Occupational Titles. If there is a conflict, the court must decide

whether it is direct or, in the word used by SSR 00-4p, apparent, which might require a

remand for the Commissioner to resolve the unexplained conflict. If there is no direct

or apparent conflict, the court must determine whether there is an indirect or implied

conflict and, if so, whether plaintiff's failure to question the vocational expert about the

conflict at the hearing precludes Johnson from appealing to this court on the basis of the conflict.

My research has located no Fifth Circuit case that has addressed any alleged conflict between a claimant's limitation to simple, repetitive and routine tasks and the General Educational Development Reasoning Levels for a particular job. Similarly, my research has located no case from any court that has addressed whether Reasoning Level 4, which is the level of the information clerk job identified by the vocational expert in the instant case, is consistent with a limitation to simple, routine and repetitive work.

However, numerous district and appellate courts have addressed whether a Reasoning Level of 3 conflicts with a limitation to simple, repetitive and routine tasks. There is a split of authority among those courts. A magistrate judge in the District of Maine, in a thorough opinion that was adopted by a district judge of that court, recently reviewed the case law on this issue. The court concluded that the "more well-reasoned and persuasive" authorities support a ruling that a job with a Reasoning Level of 3 is not inherently inconsistent with a limitation to simple, routine tasks and that no apparent conflict exists between the Dictionary of Occupational Titles and a vocational expert's testimony that a claimant with such a limitation can perform a certain job, when the ALJ does not raise and the vocational expert does not discuss the fact that the job has a Reasoning Level of 3. Welch, 2012 WL 3113148, at *5.

The Welch court noted that the Seventh, Eighth, Ninth and Eleventh Circuits have found no conflict in such cases. Id. at *7 n.6 (citing Hurtado v. Comm'r of Soc. Sec., 425 F. App'x 793, 794-95 (11th Cir. 2011); Morris v. Comm'r Soc. Sec. Admin., 421 F. App'x 693, 694 (9th Cir. 2011); Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009); Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007)). The Fourth Circuit has also specifically "affirmed on the reasoning of the magistrate judge" in two cases, Marshall v. Barnhart, No. 01-2211, 2002 WL 32488432, at *10 (D. Md. Sept. 27, 2002), aff'd, 63 F. App'x 171 (4th Cir. 2003), and Cottman v. Astrue, No. BPG-08-1753, 2009 WL 4884506, at *6 n.5 (D. Md. Dec. 9, 2009), aff'd, 400 F. App'x 769 (4th Cir. 2010). Even though the ALJs in these Fourth, Seventh, Eighth, Ninth and Eleventh Circuit cases and in numerous other district court cases had not questioned the vocational expert about whether a Reasoning Level of 3 was consistent with the claimant's limitation to simple, repetitive and routine tasks, the courts found that no apparent conflict existed. Therefore, SSR 00-4p did not apply and the district court was not required to remand the matter to the Commissioner for an explanation. Welch, 2012 WL 3113148, at *7.

Among the appellate courts, only the Tenth Circuit has held to the contrary. That court's sole analysis consisted of the statement that a limitation to simple, routine work "seems inconsistent with the demands of level-three reasoning," while "level-two reasoning appears more consistent with" the plaintiff's residual functional capacity.

Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005).  Although district courts in

the Tenth Circuit and elsewhere have followed Hackett, "'the great weight of authority

on this issue'" is that no apparent conflict exists between a residual functional capacity

limitation to simple, repetitive and routine tasks and Reasoning Level 3.  Welch, 2012

WL 3113148, at *7 (quoting Auger v. Astrue, 792 F. Supp. 2d 92, 97 (D. Mass. 2011)).

Johnson's argument that there is a "direct conflict" between vocational expert

Bailey's testimony and the Dictionary of Occupational Titles as to the job of furniture

rental clerk, which has a Reasoning Level of 3, is unavailing under Carey and the

persuasive authorities from the Fourth, Seventh, Eighth, Ninth and Eleventh Circuits

cited above.  Plaintiff erroneously assumes that the language of the Commissioner's

regulations regarding the capacity to perform the mental demands of work, which the

ALJ used in her assessment of Johnson's residual functional capacity to do simple,

repetitive and routine tasks, mirrors the language in the scale of Reasoning Levels used

in the Dictionary of Occupational Titles.  It does not.

> When it comes to the capacities to understand, remember, carry out, and
> persist with tasks, the Commissioner's regulations describe[ ] work
> instructions, tasks, and procedures in terms of being "detailed,"
> "complicated," or complex," on the one hand, and "simple," on the other.
> Within this range exist a variety of potential functional restrictions, such as
> a restriction precluding fast-paced work or highly stressful work, or a
> restriction requiring a distraction-free environment, but the regulations do
> not afford any system to chart the range of concentration demanded by the
> most simple and the most complex unskilled work and they do not forbid
> the use of terms other than simple to describe where a claimant is on the

continuum between the most simple and the most complex tasks involved in unskilled labor. By comparison, the [DOT] breaks the reasoning demands of work into six levels, ranging from "simple one- and two-step instructions" at level one to "apprehend [ing] the most abstruse classes of concepts" at level six.

Welch, 2012 WL 3113148, at *5 (citing 20 C.F.R. §§ 404.1569a(c)(1)(iii), 416.969a(c)(1)(iii); Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(C)(3)) (quotation and additional citation omitted); accord Thompkins v. Astrue, No. 09-C-1339, 2010 WL 5071193, at * (N.D. Ill. Dec. 6, 2010); Fletcher v. Astrue, No. 5:09-CV-070-BG , 2010 WL 1644877, at *4-5 (N.D. Tex. Mar. 31, 2010), report and recommendation adopted, 2010 WL 1644874 (N.D. Tex. Apr. 23, 2010); Abshire v. Astrue, No. 07-CV-1856, 2008 WL 5071891, at *8 (W.D. La. Oct. 29, 2008), report & recommendation adopted, 2008 WL 5746955 (W.D. La. Dec. 1, 2008). Courts have "noted the 'incongruity that exists between the Social Security regulations and the DOT[,]' with 'no one-to-one parallel [to] be found between "simple" as it is used under the regulations and the DOT's requirements[.]'" Welch, 2012 WL 3113148, at *6 (quoting Auger, 792 F. Supp. 2d at 95-96); see also Webb v. Astrue, No. 4:08-CV-747-Y, 2010 WL 1644898, at *12 n.3 (N.D. Tex. Mar. 2, 2010), report & recommendation adopted, 2010 WL 1644697 (N.D. Tex. Apr. 22, 2010) (citing Adams v. Astrue, No. 07-CV-1248, 2008 WL 2812835, at *3 (W.D. La. June 30, 2008)) ("use of the word

'detailed' in the DOT is not equivalent to the word 'detailed' as used in the Social Security regulations") (quotation omitted).

Reasoning Levels 1, 2 and 3 as defined in the Dictionary of Occupational Titles each "entail commonsense understanding of instructions and dealing with problems involving, at most, several variables in or from standardized situations." Welch, 2012 WL 3113148, at *6. "Thus, reasoning level three is very similar to reasoning levels one and two" and all three levels "are consistent with a limitation to simple, unskilled work." Thacker v. Astrue, No. 3:11CV246-GCM-DSC, 2011 WL 7154218, at *4 (W.D.N.C. Nov. 28, 2011), report & recommendation adopted, 2012 WL 380052 (W.D.N.C. Feb. 6, 2012).

In the instant case, there is no direct conflict between the Dictionary of Occupational Titles definition of the job of counter clerk, which requires a maximum Reasoning Level of 3, and Bailey's testimony that a claimant with a limitation to simple, repetitive and routine tasks is capable of performing the job. "While certainly an argument can be made that the ability to perform only simple, repetitive tasks is inconsistent with Level 3 reasoning, the two are not in obvious, direct conflict." Abel v. Astrue, No. 3:09cv327-TSL-FKB, 2011 WL 1099890, at *7 (S.D. Miss. Mar. 2, 2011); see also Hurtado, 425 F. App'x at 795 ("We discern no apparent conflict between the [vocational expert's] testimony and" the Reasoning Levels of 2 and 3 for the jobs he

named, which are not "inconsistent with the ALJ's hypothetical limiting [plaintiff] to only simple routine work."); Terry, 580 F.3d at 478 (ALJ's failure to ask vocational expert if his testimony conflicted with the Dictionary of Occupational Titles "is harmless unless there actually was a conflict. Here, there was not" any apparent conflict between jobs with Reasoning Level 3 and a limitation to "simple, unskilled work."); Renfrow, 496 F.3d at 921 (Reasoning Level 3 not inconsistent with limitation to "non-complex" work and ALJ's failure to ask vocational expert if his testimony conflicted with the Dictionary of Occupational Titles was harmless because no such conflict existed.).

Nothing in the definition of the job of counter clerk or in the administrative record of the instant case creates a direct or apparent conflict with Bailey's testimony. In the absence of such a conflict, neither Carey nor SSR 00-4p requires a remand to address the ALJ's failure to ask the vocational expert about the limitations of Reasoning Level 3.

To the extent that there is any implied or indirect conflict between Bailey's testimony and the requirements of Reasoning Level 3 for the job of counter clerk, the ALJ may rely upon the vocational expert's testimony, provided that the record reflects an adequate basis for doing so. Carey, 230 F.3d at 146; Veal, 618 F. Supp. 2d at 609. Johnson has not contested any of the ALJ's factual findings, as amended by the Appeals Council, at the first four steps of the sequential evaluation, including the finding that she can perform simple, repetitive and routine work. Bailey testified that the hypothetical

claimant could perform the job of counter clerk with that limitation and that her testimony is consistent with the Dictionary of Occupational Titles. The ALJ cited SSR 00-4p and found that the testimony was consistent with the Dictionary of Occupational Titles. "[I]n this case, the vocational expert's clear and unchallenged testimony that [plaintiff] could perform the identified jobs . . . is adequate, in the context of this record as a whole, to support the ALJ's determination that [she] could perform other available work." Carey, 230 F.3d at 147.

In a similar case, the District Court for the Southern District of Mississippi relied on Carey and found no reversible error when neither the ALJ nor plaintiff's counsel had questioned the vocational expert about any conflict between plaintiff's residual functional capacity for routine, repetitive tasks and her ability to perform a job with a Reasoning Level of 3.

> [B]ecause the conflict raised by Plaintiff was merely an indirect one, the question under Carey is simply whether the record reflects an adequate basis for the ALJ's reliance on the Vocational Expert's testimony. Here, the ALJ presented to the Vocational Expert a hypothetical that contained all the limitations supported by the record, and the Vocational Expert responded by stating that such a person could perform the three jobs [that have Reasoning Levels of 2 and 3]. Although the Plaintiff's counsel questioned the Vocational Expert by posing additional limitations on the hypothetical . . . , the Vocational Expert's testimony was not challenged or contradicted in any manner. The Court, therefore, concludes that the record reflects an adequate basis for the ALJ's reliance on the Vocational Expert's testimony.

Abel, 2011 WL 1099890, at *7 (citing Carey, 230 F.3d at 145-47); see also Webb, 2010 WL 1644898, at *12 n.3 ("A job as a city bus driver that requires a [Reasoning Level] of three is not necessarily inconsistent with [a residual functional capacity] that includes only the ability to perform simple, routine work tasks."); Pete, 2009 WL 3648453, at *5 (Any conflict between plaintiff's limitation to "simple one to three step procedures that are routine and repetitive" and jobs with a Reasoning Level of 3 "is certainly not a facial conflict. The D.O.T. does not specifically preclude someone with plaintiff's mental [residual functional capacity] from performing the identified jobs. . . . [T]he fact that instructions may be various, furnished in multiple forms, or detailed, does not preclude them from being simple. Instead, the classification of these jobs as 'unskilled' indicates that they are by definition simple." Although the language the ALJ used to describe plaintiff's limitation "is somewhat similar to an individual's limitation under a level one reasoning development, plaintiff's [residual functional capacity] allows her to do three-step procedures that are beyond the ability of a party with level one reasoning development.").

"Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the

administrative hearing." <u>Carey</u>, 230 F.3d at 146-47. In the instant case, Johnson's attorney cross-examined Bailey and asked her to identify the specific Dictionary of Occupational Titles code numbers for the jobs Bailey had named. Counsel proposed additional hypothetical limitations, but did not inquire about the Reasoning Levels of the jobs. Just as in <u>Carey</u>, plaintiff's "counsel did not raise the issue or challenge the vocational expert's testimony that the jobs [Bailey identified] . . . could be performed with [Johnson's limitations. Plaintiff] basically contends that the vocational expert's testimony that [s]he could perform certain jobs . . . should have been explored further, when [Johnson her]self failed to do so in the administrative hearing." <u>Id.</u> at 146.

In such circumstances, Johnson cannot challenge in this court any implied or indirect conflict that she failed to raise at the hearing. <u>Hurtado</u>, 425 F. App'x at 795 (citing SSR 00-4p); <u>Pineda v. Astrue</u>, 289 F. App'x 710, 714 (5th Cir. 2008) (citing <u>Carey</u>, 230 F.3d at 146-47); <u>Wleczyk v. Astrue</u>, No. 11-7-JJB-SCR, 2012 WL 3902436, at *5 (M.D. La. Aug. 6, 2012), <u>report & recommendation adopted</u>, 2012 WL 3902433 (M.D. La. Sept. 7, 2012) (citing <u>Pineda</u>, 289 F. App'x at 714; <u>Carey</u>, 230 F.3d at 146-47); <u>Abel</u>, 2011 WL 1099890, at *7 (citing <u>Carey</u>, 230 F.3d at 146-47); <u>Pete</u>, 2009 WL 3648453, at *6 (citing <u>Carey</u>, 230 F.3d at 146-47; <u>Fields v. Bowen</u>, 805 F.2d 1168, 1170-71 (5th Cir. 1986)); <u>Brown v. Astrue</u>, No. 3:08-CV-0255-D, 2009 WL 64117, at *6 (N.D. Tex. Jan. 12, 2009) (citing <u>Pineda</u>, 289 F. App'x at 714); <u>see also</u> <u>Welch</u>, 2012 WL

3113148, at *7 (Vocational expert testified that his testimony was consistent with the Dictionary of Occupational Titles and plaintiff's counsel did not inquire about any conflict. "[B]ecause SSR 00-4p pertains only to <u>apparent</u> conflicts, a claimant waives a claim of failure to identify and resolve a conflict between vocational expert testimony and the DOT unless he or she can show that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance[.]") (quotation and citation omitted); <u>Kelly v. Astrue</u>, No. 10-1198, 2011 WL 3563197, at *16 (E.D. La. June 27, 2011), <u>report & recommendation adopted</u>, 2011 WL 3565481 (E.D. La. Aug 12, 2011) (citing <u>Carey</u>, 230 F.3d at 146-47) (Although the ALJ erred by failing to ask the vocational expert about potential conflicts between her testimony and the Dictionary of Occupational Titles, "plaintiff's counsel was given an opportunity to cross-examine the [vocational expert] about any conflicts between the requirements of the jobs she identified at the hearing and the descriptions of those jobs as contained within the DOT. . . .  Having failed to do so, plaintiff has not shown that he was prejudiced by what is nothing more than a technical violation of SSR 00-4p . . . ."); <u>Abshire</u>, 2008 WL 5071891, at *9 (The ALJ found at the fourth step of the sequential evaluation that plaintiff could perform her past relevant work.  Plaintiff argued on appeal that she could not perform the job because it had a Reasoning Level of 6 according to the Dictionary of Occupational Titles, which she alleged conflicted with the way she actually had

performed the job. "Abshire did not question the [vocational expert] about the reasoning requirements of her [past relevant] work . . . . Since Abshire did not challenge the [vocational expert's] testimony, at her hearing, concerning any differences between the job of safety coordinator as described in the DOT and the job as she actually preformed [sic] it, Abshire may not now raise an issue as to a purported conflict between her actual job and the description of that job in the DOT.").

> Litigants can preserve conflict issues for appeal by raising them at the hearing.
>
> [Pursuant to Carey,] possible conflicts between vocational expert testimony and the Dictionary of Occupational Titles should be developed at the administrative level though adversarial cross-examination of the vocational expert witness. Claimants can test the [vocational expert's] opinion that there is no conflict with the DOT by routinely asking them to recite for the record the reasoning abilities and worker trait characteristics that the DOT attributes to each job that the vocational expert testifies that a hypothetical person with the same limitations as the claimant can still perform. Claimants can then develop any apparently contrary requirements through cross-examination. Since Young did not develop the evidence as to this issue at his administrative hearings, he cannot raise it now in this court.

Young v. U.S. Comm'r of Soc. Sec., No. CV08-0474, 2009 WL 2827945, at *13 (W.D. La. Sept. 1, 2009) (citing Carey, 230 F.3d at 147).

All of the cases discussed above addressed alleged conflicts between a residual functional capacity limitation to simple, repetitive and routine work and jobs with a Reasoning Level of 3. My research has located no case from any court that has analyzed whether a Reasoning Level of 4, which is the level of the information clerk job identified

by the vocational expert in the instant case, is consistent with a limitation to simple, routine and repetitive work. A few cases have implied in dicta that a Reasoning Level of 4 may <u>not</u> be consistent with such work. <u>See, e.g.</u>, <u>Welch</u>, 2012 WL 3113148, at *6 (Although only Reasoning Level 3 was at issue, the court noted that there are "material . . . distinctions between the first three levels . . . and the final three." Levels 1, 2 and 3 each involve commonsense understanding and dealing with problems in standardized situations, while "levels 4 through 6 entail the application of various principles to define and/or solve problems, and they contemplate, in the case of level 4, limited standardization and, in the case of levels 5 and 6, no standardization.")[4]; <u>Thacker</u>, 2011 WL 7154218, at *4 (Levels 4, 5 and 6 "are more complex [the first three levels], requiring the worker to '[a]pply principles' to problems.").

However, this court need not decide whether a Reasoning Level of 4 for the job of information clerk is consistent with a limitation to simple, routine and repetitive work because Bailey testified, and the ALJ found, that there are 1,800 counter clerk jobs in Louisiana and 179,200 such jobs nationally. The counter clerk job has a Reasoning

---

[4]Reasoning Level 5 is defined as: "'Apply principles of logical or scientific thinking to define problems, collect data, establish facts, and draw valid conclusions. Interpret an extensive variety of technical instructions in mathematical or diagrammatic form. Deal with several abstract and concrete variables.'" Level 6 requires a worker to "'[a]pply principles of logical or scientific thinking to a wide range of intellectual and practical problems'" and to "'[d]eal with nonverbal symbolism (formulas, scientific equations, graphs, musical notes, etc.) in its most difficult phases[,]'" as well as to "'[d]eal with a variety of abstract and concrete variables'" and "'[a]pprehend the most abstruse class of concepts.'" <u>Id.</u> at *3 & n.3 (quoting Dictionary of Occupational Titles, Appendix C, § III).

Level of 3, which, for the reasons discussed above, is not inconsistent with Johnson's limitation to simple, repetitive, routine work.

The Fifth Circuit has not established any bright-line rule regarding what constitutes a "significant number" of jobs for purposes of step five of the sequential analysis. Kelly, 2011 WL 3563197, at *17; Alexander v. Comm'r of Social Sec., No. 08-1570, 2010 WL 2571980, at *4 (W.D. La. June 8, 2010), judgment modified on other grounds, 2010 WL 2484219 (W.D. La. June 10, 2010), aff'd, 412 F. App'x 719 (5th Cir. 2011). However, the numbers that Bailey cited for counter clerk jobs are significant enough to carry the Commissioner's step-five burden, without considering the additional job of information clerk. See Monroe v. Shalala, 55 F.3d 633, 1995 WL 313965, at *8 (5th Cir. 1995) (997 and 2,262 available jobs were significant numbers) (citing Trimiar v. Sullivan, 966 F.2d 1326, 1330 (10th Cir. 1992) (650 to 900 jobs); Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988) (1,350 jobs); Denais v. Sec'y of Health & Human Servs., 820 F. Supp. 278, 282-83 (W.D. La. 1993) (1,004 jobs)); Kelly, 2011 WL 3563197, at *17 (9,000 jobs); McGee v. Astrue, No. 08-0831, 2009 WL 2841113, at *6 n.14 (W.D. La. Aug. 28, 2009) (citing 42 U.S.C. § 423(d)(2)(A); Johnson v. Chater, 108 F.3d 178,181 (8th Cir. 1997)) (18,760 and 150 jobs). Johnson has not rebutted that evidence. Even if there is a conflict between Johnson's limitation to routine work and a job at Reasoning Level 4, Johnson is not prejudiced by the ALJ's inclusion of the job of

information clerk when there is no conflict regarding the job of counter clerk and that job is available in significant numbers. See Fletcher, 2010 WL 1644877, at *4-5 (Although the ALJ erred by finding at the fifth step that plaintiff could perform one of three jobs identified by the vocational expert, the Commissioner carried his burden to demonstrate that the other two jobs existed in significant numbers and no remand was necessary.).

Finally, "[p]rocedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007) (quotation and citations omitted). Plaintiff must show that her substantive rights were prejudiced by the ALJ's procedural errors, if they were errors, in failing to question Bailey about the Reasoning Levels of the two jobs that the vocational expert identified and in including at step five of the evaluation one job with a Reasoning Level of 4, which may be inconsistent with plaintiff's mental residual functional capacity. Id.; Hammond v. Barnhart, 124 F. App'x 847, 851 & n.8 (5th Cir. 2005). "Even assuming that a violation of SSR 00-4p did occur, plaintiff has not shown that [s]he was prejudiced thereby as [s]he points to no additional evidence that might have led to a different decision." Morris v. Astrue, No. 10-3339, 2011 WL 7341504, at *12 (E.D. La. Dec. 14, 2011), report & recommendation adopted, 2012 WL 519629 (E.D.

La. Feb. 15, 2012) (citing <u>Barratt v. Astrue</u>, No. 07-51067, 2008 WL 2325636, at *2 n.1 (5th Cir. June 6, 2008); <u>Jackson</u>, 2011 WL 4943547, at *11).

Accordingly, plaintiff's assignment of error lacks merit.

CONCLUSION

The ALJ did not err by failing to question the vocational expert about the Reasoning Levels of the two jobs that the vocational expert testified the hypothetical claimant could perform. A Reasoning Level of 3 is not inconsistent with plaintiff's mental residual functional capacity. The ALJ's finding that Johnson can perform the job of counter clerk, which has a Reasoning Level of 3, was supported by the vocational expert's uncontradicted testimony and other substantial evidence in the record.

**RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v.</u>

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[5]

New Orleans, Louisiana, this _____5th_____ day of October, 2012.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[5]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.